IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Robert Edwards, | ) | CA No.:  0:08-2263-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM IN OPPOSITION** |
| | ) | **OF DEFENDANT'S MOTION TO** |
| Charles Schwab Investment | ) | **DISMISS AND COMPEL** |
| Management, Inc., | ) | **ARBITRATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff Robert Edwards (hereinafter "Edwards" or "Plaintiff"), through

undersigned counsel, submits this Brief in Opposition of Defendant's Motion to

Dismiss and Compel Arbitration.

## FACTS

Defendant has filed a Motion to Compel Arbitration and to Dismiss or Stay

this matter.  Defendant contends that the Schwab IRA Account Application

Agreement that Plaintiff signed on March 9, 2007 created a binding arbitration

agreement that encompasses causes of action asserted in the matter *sub judice.*

Plaintiff brought his action against Schwab for fraud in the inducement, fraud,

and negligent misrepresentation.  Notably, all three causes of action are based upon

facts occurring before the March 9, 2007 agreement was signed.  As detailed in

Plaintiff's Complaint and in his affidavit attached hereto as Exhibit A, Defendant

made affirmative misrepresentations to Plaintiff to induce him into purchasing

investment funds with Defendant.  Plaintiff's affidavit provides extensive detail as to

the misrepresentation which led him to come to do business with Defendant.  The

1

misrepresentations are the basis of Plaintiff's complaint.  The misrepresentations occurred before Plaintiff entered into any contract or relationship with Defendant.

## ARGUMENT

The entire contract, including the arbitration provision, was induced by fraud, and thus, should be void *ab initio*.  The arbitration clause, specifically, was not created by a meeting of minds and is not valid.  (Please see *Hooters of America, Inc. v. Phillips*, 39 F. Supp. 2d 582, 1998 U.S. Dist. LEXIS 3962 (SC Dis., 1998), which states, "Because arbitration is entirely a creature of contract, the court's initial inquiry was to determine whether the parties properly entered into a "valid" …arbitration agreement…In order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to all the essential and material terms of the agreement."  (Internal citations omitted).)  Plaintiff agreed to the arbitration clause only because Defendant had previously misrepresented the nature of the funds in which he was investing.  Had Plaintiff possessed a true knowledge of the funds (most importantly, the risky nature of his investment), he would not have agreed to any arbitration provision.  If one party lacks crucial knowledge about the agreement he is entering into due to fraud committed by the other party, then a valid agreement cannot be created.  Thus, the arbitration provision is not valid because Plaintiff was induced into the agreement by fraud.

Plaintiff respectfully submits that under the first principle of arbitration law, a court must resolve the question of arbitrability.  (*Gregory v. Interstate/Johnson Lane Corp.*, 1999 U.S. App. LEXIS 20862 (4th Cir. App. 1999)).  A "compulsory

submission to arbitration cannot precede judicial determination" that there exists a

binding and valid contract creating the duty to arbitrate. (*Id.,* quoting *AT&T*

*Technologies, Inc. v. Communications Workers of America Et. Al.*, 475 U.S. 643,

106 S. Ct. 1415 (1986)). (Please see also *Virginia Carolina Tools, Inc. v.*

*International Tool Supply, Inc.*, (984 F.2d 113, 1993 U.S. App. LEXIS 382 (4th Cir.

App. 1993), as cited in *Gregory*) where the court held that a dispute about the "very

existence" of the contractual relationship was to be decided by the district court and

*Glass v. Kidder Peabody & Co.*, (114 F.3d 446, 1997 U.S. App. LEXIS 11930 (4th

Cir. App. 1997), as cited in *Gregory*) where the court determined that whether "a

valid agreement to arbitrate exists between the parties" is for the court to decide.)

The Supreme Court held, in *Prima Paint, Corp. v. Flood & Conklin Mfg. Co.,* (388

U.S. 395, 87 S. Ct. 1801 (1967)), that a federal court is only to order arbitration to

proceed once it is satisfied that the making of the agreement for arbitration is not in

issue. Thus, if the claim is for fraud in the inducement of the arbitration clause itself

– an issue that goes to the "making" of the agreement to arbitrate – the federal court

must adjudicate it.

The matter *sub judice* cannot be submitted to arbitration because the core

dispute centers on whether the written contract in which the arbitration agreement

exists was fraudulently induced. Plaintiff is fully aware that the Federal Arbitration

Act (9 U.S.C.S. § 1 et seq.) favors the enforceability of the arbitration provision in

matters where the provision was not induced by fraud. (*Id.*) Plaintiff, however, was

induced into the arbitration provision by fraud. But for the fraudulent

misrepresentations, Plaintiff would not have been induced into entering into the arbitration provision.

The Honorable Judge Currie recently issued a decision on a similar issue, but with **very** different facts, in *Ivey v. D.R. Horton.* (2008 U.S. Dist. LEXIS 52971, (SC Dist. July 10, 2008)). In *Ivey*, Judge Currie cites to *Prima Paint* (*supra*), stating, "If a claim of fraud relates specifically to the making of an arbitration agreement, the federal court should adjudicate whether the contract was induced by fraud, rather than an arbitrator." Ultimately, Judge Currie enforced the arbitration agreement in *Ivey*. However, this case is clearly distinguishable from *Ivey* and *Ivey* actually demonstrates why this Court should not enforce the arbitration agreement. In *Ivey,* the court cites to evidentiary flaws to justify compelling arbitration, stating,

> "Ivey offers the court no supporting affidavits or documentation, nor further elaboration of the alleged "evidence of fraud in the inducement." The time line offered by Ivey noting the beginning of his employment with DRH, subsequent changes in his job responsibilities, and the time of signing the arbitration agreement does not support his claim of fraud in the inducement… [N]othing about this series of circumstances suggests fraud in the inducement of the arbitration provision. Without further explanation or specific allegations of acts that satisfy the elements of fraud, this court cannot find the existence of any fraud related to the making of the Agreement. The facts suggested by Ivey in his memorandum do not support a claim of fraudulent inducement for the reasons explained above and those offered by DRH. The court concludes that there is no basis on which to avoid enforcement of the plain language of the Agreement."

The matter *sub judice* is completely factually different from *Ivey*. Plaintiff, here, is able to provide a supporting affidavit and documentation. Plaintiff

4

respectfully submits his affidavit, attached hereto as Exhibit A, in which he states, in

part:

> Had I been aware of Schwab's misrepresentations, I would
> not have purchased the ultra-short bond funds with Schwab.
> Furthermore, I would not have entered into an arbitration
> agreement, giving up my rights, if I had known that they were
> not selling me what I believed I was purchasing. Had I been
> aware that I was purchasing such a risky investment vehicle, I
> would not have agreed to arbitrate any issues that may have
> arisen (of course, I would not have purchased the funds in the
> first place because I was searching for a conservative
> investment vehicle). Thus, Defendant's fraudulent
> misrepresentations induced me into entering into the contract
> as a whole and specifically into the arbitration provision.
> Each and every provision of my agreement with Schwab was
> fraudulently induced by their misrepresentations of the ultra-
> short bond funds as a conservative and safe alternative to
> money market funds.

Plaintiff's case is still in the very earliest stages, but even at this stage in the

litigation, he can provide documentation that he was fraudulently induced into the

arbitration provision and the contract as a whole. Moreover, Schwab is facing

numerous similar complaints and suits and "where there is smoke there is fire."

(Please see the articles "Charles Schwab YieldPlus Fund Lawsuits," "Schwab's

largest bond fund still tumbling," "YieldPlus Fund from Charles Schwab Implodes,"

"Schwab YieldPlus Bond Fund Tumbles 9.9% in March 08," and "Be careful where

you look for yield," attached hereto as Exhibits E, F, G, H, and I respectively). As

stated in the Complaint, Defendant fraudulently induced Plaintiff into purchasing the

ultra-short bond fund by describing it as "an **alternative** approach to holding long-

term cash in a money market fund." (Please see "Charles Schwab Investment

Management Perspectives" attached hereto as Exhibit B.) However, the Securities

and Exchange Commission states that ultra-short bond funds are not a safe alternative

to money market accounts and warns investors of the risk:

> "Some investors don't realize that there are material differences
> between ultra-short bond funds and other investments with
> relatively low risks, such as money market funds and certificates
> of deposit.  Specifically, ultra-short bond funds tend to have
> higher risks than money market funds and certificates of deposit
> (CDs)."   (Please see the SEC website, a copy of which is
> attached hereto at Exhibit C).

Thus, Plaintiff, in the matter *sub judice,* is clearly able to provide all the

evidence that was lacking in *Ivey.*  Plaintiff's claim of fraud relates specifically to the

making of the arbitration agreement that was **only** signed in conjunction with his

purchase of ultra-short bond funds that were misrepresented to him (and many

others).

Plaintiff also respectfully submits that the language of the arbitration clause

clearly does not encompass his dispute.  An arbitration provision's scope and

meaning is resolved under the principles governing contract interpretation.  (Please

see Judge Currie's opinion in *Mortgage Assurance, LLC v. Wachovia Corp.,* 2006

U.S. Dist. LEXIS 53503, stating "As the Fourth Circuit has noted, whether a dispute

is subject to arbitration is primarily an issue of contract interpretation."  (Internal

quotes omitted.))

The scope of the arbitration clause is defined by the following language:

> Arbitration Agreement.  Any controversy or claim arising out of
> or relating to (i) this Agreement, any other agreement with
> Schwab, an instruction or authorization provided to Schwab or
> the breach of any such agreements, instructions, or
> authorizations; (ii) the Account, any other Schwab account or
> Services; (iii) transaction in the Account or any other Schwab
> account; (iv) or in any way arising from the relationship with

> Schwab, its parent, subsidiaries, affiliates, officers, directors, employees, agents or service providers, including any controversy over the arbitrability of a dispute, will be settled by arbitration. (Please see Page 2, Section 11 of the Schwab IRA Application Agreement, attached hereto as Exhibit D.)

Plaintiff respectfully submits that the facts set forth in his Complaint clearly do not fall within the language of the arbitration provision. The provision states that it applies to "any controversy or claim arising out of or relating to" (i) the Agreement, (ii) the Account, (iii) transactions, or (iv) the relationship with Schwab. Plaintiff's claims do not fall within any of the above clauses of the arbitration provision. Plaintiff's complaint arises from actions and misrepresentations made by Defendant before the "Agreement" ever existed, and, thus, could not arise from the agreement. Plaintiff had not purchased any ultra-short term bond funds from Defendant when the misrepresentations were made. Thus, this dispute did not arise or relate to the "Account". Since Plaintiff had no "Agreement" or "Account" when Defendant made misrepresentations to him, the Complaint did not arise or relate to any "transactions" from the account. Finally, when Schwab made the misrepresentations that led to the matter *sub judice*, Plaintiff had no relationship whatsoever with Schwab. The relationship was not established until Plaintiff entered the "Agreement" after applying for the "Account". All actions and misrepresentations in Plaintiff's Complaint arose well before any of the above occurrences and items were created. Thus, the arbitration provision clearly does not apply to the matter *sub judice*.

Plaintiff respectfully submits that the scope of the arbitration provision clearly does not encompass the dispute stated in his Complaint. However, if this Court should find that provision ambiguous then under the principle of *contra preforentum,*

7

the contract must be interpreted in favor of the Plaintiff.  (*Carolina Care Plan, Inc. v. McKenzie,* 467 F.3d 383, 2006 U.S. App. LEXIS 26217 (4th Cir. App. 2006)).  Defendant wrote the arbitration provision, undoubtedly with extensive review and editing by lawyers and expert draftsmen.  Plaintiff did not have any opportunity to negotiate the terms of the provision.  If Defendant had intended for the arbitration provision to apply to actions occurring before any agreement or relationship was made, it would have written the contract to cover such.  Indeed, Defendant had every opportunity to write the contract as such, and chose not to draft the arbitration clause to apply to disputes arising out of actions occurring before any agreement or relationship.  Defendant was so careful in its drafting of the provision that it included language to cause the arbitration provision to "apply even if the application to open the Account is denied and will survive the closure of your Account and/or the termination of services rendered under this Agreement."  (Please see Exhibit D, page 2 of 2).  If Defendant had intended the arbitration provision to apply to disputes arising from occurrences before the formation of any agreement, account, transaction, or relationship, they could (and should) have written the contract to encompass such occurrences.

## Conclusion

Plaintiff respectfully submits that the matter *sub judice* cannot be arbitrated because the arbitration provision specifically, along with the entire contract was induced by fraudulent misrepresentations made by Defendant, as demonstrated in the attached documentation.  According to the U.S. Supreme Court, in *Prima Paint*, the

federal courts are to decide whether a valid, enforceable arbitration provision was ever created.  Even if this Court should find that the arbitration clause was not induced by fraud, this dispute clearly does not fall within the specific language of the arbitration clause.

Plaintiff respectfully request that this Court deny Defendant Charles Schwab's Motion to Compel Arbitration and to Dismiss or Stay Action.

s/Nathaniel W. Bax, Esq.

Nathaniel W. Bax, Esq.

Federal ID:  9835

Robert E. Hoskins, Esq.

Federal ID:  5144

**FOSTER LAW FIRM, L.L.P.**

Post Office Box 2123

Greenville, SC 29602

(864) 242-6200

(864) 233-0290 (facsimile)

E-mail:  rhoskins@erisaexperience.com

nbax@erisaexperience.com

Date: <u>August 1, 2008</u>                    Attorneys for Plaintiff

9